UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JESSICA TURCOTTE, | No. ED CV 09-1277-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 10, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 31, 2009, and August 21, 2009. Pursuant to the Court's order, the parties filed a Joint Stipulation on January 26, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 14, 1988. [Administrative Record ("AR") at 36.] She completed high school and has had some special education in college, but has no past relevant work experience. [AR at 24, 29-30, 204.]

Starting in 1998, plaintiff received Supplemental Security Income ("SSI") payments as a child based on mental retardation, speech and hearing delays, and a learning disorder. [AR at 17, 36-37, 40-42.] On December 13, 2007, after plaintiff attained the age of 18 years, her disability status was reevaluated, and the Administration found her to be not disabled.[1] [AR at 17, 38, 43-47.] Plaintiff requested reconsideration of the cessation of her SSI payments, and on February 29, 2008, a disability hearing officer determined that plaintiff's disability ceased on December 2, 2007. [AR at 39, 50-64.] Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 67.] At the hearing on May 27, 2008, the ALJ granted plaintiff's request for a continuance so she could retain counsel. [AR at 503-10.] A second hearing was held on June 30, 2008, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 26-35.] On September 2, 2008, the ALJ issued a decision finding plaintiff not disabled. [AR at 14-25.] When the Appeals Council denied plaintiff's request for review of the hearing decision on May 14, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 6-10.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] Prior to the Administration's determination that plaintiff was no longer disabled, plaintiff submitted an application for adult SSI payments, alleging that she is unable to work due to a learning disability and lupus. [AR at 193-206.]

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   DISABILITY REDETERMINATION PROCESS

The evaluation of disability for children differs from that for adults. For an individual under eighteen years of age to be disabled for the purpose of receiving benefits, she must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(C)(i). If an individual has received disability benefits as a child, her eligibility for benefits must be reconsidered by the Commissioner when the individual reaches eighteen years of age. 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987. In reconsidering the individual's

eligibility for continued disability benefits, the Commissioner applies the criteria that are used in assessing whether an adult disability claimant is disabled. Id.

The Commissioner (or ALJ) normally follows a five-step sequential evaluation process in assessing whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). At step one, the Commissioner normally determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. However, this step is not applied when the Commissioner redetermines if an individual who received SSI payments as a child is still eligible for benefits upon reaching the age of eighteen years. 20 C.F.R. § 416.987(b). In the second step of the normal sequential evaluation process, the Commissioner must determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520, 416.920. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ properly skipped step one of the normal five-step sequential evaluation. [See AR at 18-19.] At step two, the ALJ concluded that plaintiff's learning disorder is a severe impairment. [AR at 19.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] "to perform a full range of work at all exertional levels[3] but with the following nonexertional limitations: she is limited in reading and writing and can perform simple construction and make simple decisions." [AR at 22.] At step four, the ALJ concluded that plaintiff does not have any past relevant work. [AR at 24.] At step five, using the Medical-Vocational Rules as a framework and the vocational expert's testimony, the ALJ concluded that plaintiff is able to perform jobs existing in significant numbers in the national economy. [Id.] Accordingly, the ALJ found that plaintiff's disability ended on December 1, 2007, and she has not become disabled since that date. [AR at 25.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that: (1) the ALJ failed to properly consider the opinion of Dr. Charles W. Jackson, an examining psychologist; (2) the ALJ did not reach a proper RFC determination with regard to plaintiff's ability to read and write; and (3) the Appeals Council failed to properly consider additional evidence submitted after the ALJ's decision. [See Joint Stipulation ("JS") at 3.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

/
/
/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] The Administration classifies exertional work levels as sedentary, light, medium, heavy, and very heavy. See 20 C.F.R. §§ 404.1567, 416.967.

### A. DR. JACKSON'S OPINION

Plaintiff contends that the ALJ failed to properly consider the February 12, 1999, Social Security Disability Evaluation prepared by Dr. Charles W. Jackson, an examining psychologist, when plaintiff was ten years old. [JS at 3; see AR at 370-75.] During the evaluation, Dr. Jackson conducted a Wechsler Intelligence Scale for Children -- Third Edition (WISC-III), which demonstrated that plaintiff had "a verbal IQ of 62, a performance IQ of 62, and a full scale IQ of 58," and that intellectually, plaintiff fell "within the mild mental retardation range." [AR at 373.] Dr. Jackson opined that plaintiff's condition would likely improve with age as she developed "skills to perform simple tasks," but that she would need to be in special education classes. [AR at 374.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews, 53 F.3d at 1043).

In the opinion, the ALJ summarized plaintiff's medical record, including the evaluation of Dr. Jackson. [AR at 19-20.] The ALJ did not, however, expressly state the weight he afforded that evaluation. Plaintiff argues that the ALJ erred in failing to explain in the decision whether he accepted or rejected Dr. Jackson's findings. [JS at 4.] Specifically, plaintiff asserts that even though Dr. Jackson opined that plaintiff would likely improve, his opinion that she would need to be in special education classes suggests that "the residual [e]ffect of her impairments may still be severe enough to affect her ability to perform basic work related activities." [JS at 4.] Plaintiff's assertion lacks merit.

6

The ALJ was only obligated to "explain why 'significant probative evidence [was] rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)). The ALJ was not required to expressly state the weight he afforded evidence that was not rejected. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (quotation and citations omitted). In discussing plaintiff's medical history and her receipt of SSI payments as a child, the ALJ noted Dr. Jackson's February 1999 evaluation, but there is no indication that the ALJ rejected Dr. Jackson's opinion that plaintiff needed to attend special education classes. To the contrary, the ALJ found plaintiff's learning disability to be "severe" and noted that plaintiff had been in special education classes since elementary school "and was in college for disabled students." [AR at 19, 22.] In discussing plaintiff's medical record, the ALJ also noted the July 8, 2002, psychological evaluation of Dr. Nick B. Andonov, an examining psychologist, conducted when plaintiff was thirteen years old. [AR at 463-68.] The 2002 evaluation, which included, among other tests, a WISC-III, demonstrated that plaintiff's IQ improved with age -- just as Dr. Jackson predicted it would. In 2002, plaintiff had a verbal IQ of 71, a performance IQ of 80, and a full scale IQ of 73, placing her "near the bottom of borderline range of intelligence." [AR at 465.] The ALJ's discussion of the medical evidence showing the progression of plaintiff's condition, and his recognition of her continuation in special education classes, indicates that the ALJ accepted Dr. Jackson's opinion that plaintiff would need special education as a result of her mental impairment. Since the ALJ did not reject Dr. Jackson's opinion, he was not required to explicitly state in the decision whether he accepted or rejected it. Vincent, 739 F.2d at 1394-95.

Moreover, plaintiff has failed to support her conclusory contention that Dr. Jackson's opinion regarding plaintiff's need for special education shows that her mental impairment may be severe enough to render her unable to work. [JS at 4.] As a claimant is not entitled SSI payments solely on the basis that she is a special education student (see Jamerson v. Chater, 112 F.3d 1064, 1067-68 (9th Cir. 1997) (affirming ALJ's decision to deny SSI payments to a claimant who attended special education classes since the first grade)), plaintiff's need for special education,

by itself, does not make her unable to work. Accordingly, remand on this issue is not warranted. See Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court need not address a challenge to an ALJ's decision that is not argued with specificity).

**B.   THE RFC DETERMINATION**

Plaintiff contends that the ALJ erred in reaching the RFC determination. [JS at 7.] In the decision, the ALJ included in his RFC determination that plaintiff "is limited in reading and writing." [AR at 22.] Plaintiff argues that the RFC is too vaguely stated with regard to plaintiff's ability to read and write and that "it is impossible to determine" how much plaintiff's reading and writing limitations impact her "ability to perform basic work related activities." [JS at 7.]

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991)). An error is harmless if it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006). For the following reasons, the Court concludes that any vagueness in the RFC concerning plaintiff's ability to read and write was, at most, harmless error.

First, it is not clear that the ALJ was even required to discuss plaintiff's ability to read and write in assessing her RFC because these skills pertain to plaintiff's educational level.[4] See 20 C.F.R. §§ 404.1564, 416.964 (defining educational skills, including literacy level, as a vocational factor). An RFC determination is necessary to assess a plaintiff's ability to perform past relevant work, which is to be considered by the ALJ at step four of the sequential evaluation. See 20

---

[4] To the extent plaintiff challenges the RFC determination because the word "limited" vaguely describes plaintiff's ability to read and write [JS at 7-8], it appears that the ALJ may have used the word as a term of art in classifying plaintiff's educational level. The Administration uses various categories to evaluate a claimant's educational level, including, among others, "illiteracy," "marginal education," and "limited education." See 20 C.F.R. §§ 404.1564(b), 416.964(b). "Limited education" is defined as an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. [It is] generally consider[ed] that a 7th grade through the 11th grade level of formal education is a limited education." Id.

1  C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An ALJ's consideration of a claimant's educational level,
2  which is to be performed at step five of the sequential evaluation, is arguably a <u>separate</u>
3  consideration from the RFC determination. <u>See</u> <u>id</u>; 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c)
4  ("vocational factors of age, education, and work experience" are not considered at step four, but
5  these factors are considered at step five -- in addition to the RFC determination used at step four
6  -- to determine if a claimant can adjust to other work); <u>see</u> also <u>Bui v. Astrue</u>, 2009 WL 2629491,
7  *9 (D.Or. Aug. 25, 2009) ("literacy is an educational factor and not a medically determinable
8  impairment. ... [I]t is not appropriate to consider [a] [p]laintiff's literacy in [the] RFC [determination],
9  but this issue will be addressed when the Court considers alleged errors in the ALJ's step five
10 analysis"); <u>but</u> <u>see</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 n. 5 (9th Cir. 2001) (declining to decide
11 whether the ALJ was required to consider a claimant's language skills, including literacy, at step
12 four of the sequential evaluation, stating that "[t]he regulations point in contradictory directions on
13 this question."). Insomuch as the ALJ was not required to include an assessment of plaintiff's
14 ability to read and write in the RFC determination, any vagueness with regard to this aspect of the
15 RFC was harmless. <u>See</u> <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)
16 ("errors that occurred during a procedure or step the ALJ was not required to perform" are
17 harmless) (<u>citing</u> <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993); <u>Booz v. Sec'y of Health</u>
18 <u>& Human Servs.</u>, 734 F.2d 1378, 1379-80 (9th Cir. 1984)).

19      Second, any vagueness in the RFC was inconsequential to the disability determination
20 because it did not affect the vocational expert's testimony that plaintiff can work despite her
21 limitations with reading and writing or the ALJ's reliance on the vocational expert's testimony at
22 step five of the evaluation process. At a February 19, 2008, disability hearing before a hearing
23 officer, plaintiff testified that she has a learning disorder that affects her ability to read, she could
24 not perform a job requiring reading, and she was taking special education college courses in basic
25 reading and computers. [AR at 55.] At the June 30, 2008, hearing before the ALJ, plaintiff
26 testified, "reading [is] sort of hard for me because my reading level is like really low." [AR at 30.]
27 With regard to her writing, plaintiff testified, "Because my reading isn't that good, my spelling isn't
28 that good, either." [AR at 32.] The ALJ then solicited testimony from a vocational expert by asking

whether a hypothetical person with plaintiff's functional limitations, including her difficulties with reading and writing, could work. [AR at 32-34.] Specifically, the ALJ described the limiting effects of plaintiff's learning disability as follows: "I want you to assume a hypothetical person of 18 to 19 years of age who only has learning disability problems with reading and writing ... [and] requires simple remembering and carrying out of instructions with simple work-related decisions." [AR at 32-33.]

Based on this hypothetical, the vocational expert identified three jobs existing in significant numbers in the national economy that plaintiff can perform -- i.e., the jobs of a cleaner, Dictionary of Occupational Titles ("DOT") No. 323.687-014; sewing machine operator, DOT No. 689.685-118; and hand packer, DOT No. 753.687-038. [AR at 33-34.] The vocational expert also stated that there are "many more" jobs in the DOT that plaintiff can perform. [AR at 34.] A review of the reading and writing requirements provided in the DOT, particularly with regard to the jobs of a cleaner and hand packer, supports the ALJ's reliance on the vocational expert's testimony in concluding that plaintiff is able to work despite her reading and writing limitations. According to the DOT, a job's general educational development ("GED")[5] level pertains to, among other things, language development, which includes the reading and writing skills required to perform a job. See DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). There are five defined GED levels for language development under the DOT; level one[6] has the least reading and writing skills requirements, and level five has the most. Id. Significantly, two of the jobs that the vocational expert said plaintiff can perform have a language development level of one. See

---

[5] The DOT defines GED as "education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).

[6] A language level of one requires reading skills that include the ability to "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words," "[r]ead at [a] rate of 95-120 words per minute," and "[c]ompare similarities and differences between words and between series of numbers"; and the ability to write "simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).

DOT No. 323.687-014 (cleaner) and DOT No. 753.687-038 (hand packer).[7] In testifying that plaintiff can perform these two jobs, it appears that the vocational expert determined, pursuant to the ALJ's hypothetical, that even if plaintiff is not just *limited* in reading and writing, but has the *lowest* level of reading and writing abilities provided in the DOT, there are still jobs that plaintiff can perform. [AR at 33-34.] The ALJ properly relied on the vocational expert's testimony in determining that plaintiff is not disabled because the testimony was responsive to a hypothetical question that accurately described plaintiff's reading and writing limitations -- i.e., that she has problems reading and writing as a result of her learning disability. See Andrews, 53 F.3d at 1043 (in determining that a claimant is able to work at step five of the sequential evaluation, an ALJ may properly rely on vocational expert's response to a hypothetical question that accurately sets forth the claimant's limitations). Accordingly, any vagueness in the RFC with regard to plaintiff's ability to read and write was harmless as it was inconsequential to the ALJ's disability determination.[8] See Robbins, 466 F.3d at 885. Remand is not warranted on this issue.

/

/

/

---

[7] The third job identified by the vocational expert, DOT No. 689.685-118 (sewing machine operator), has a GED language development level of 2, which requires reading skills that include "[p]assive vocabulary of 5,000-6,000 words," and abilities to "[r]ead at rate of 190-215 words per minute[;] [r]ead adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation[;] and [r]ead instructions for assembling model cars and airplanes." Level two language development writing skills include an ability to "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).

[8] The Court notes that plaintiff does not claim that she is illiterate, but rather that her reading and spelling "isn't that good." [AR at 32.] The Ninth Circuit has stated that "[a] claimant is not per se disabled if he or she is illiterate." Pinto, 249 F.3d at 847. The fact that plaintiff would not necessarily be entitled to a disability finding even if she were illiterate further supports the Court's conclusion that any vagueness in the RFC regarding plaintiff's ability to read and write was inconsequential to the ALJ's disability determination. See, e.g., Lao v. Astrue, 2008 WL 3863698, at *11-12 (E.D.Cal. Aug. 18, 2008) (rejecting plaintiff's contention that his "virtual illiteracy" precluded him from performing jobs with a level one GED language development score because under such a rationale, "not a single illiterate disability applicant would be qualified for any of the jobs listed in the DOT").

### C. APPEALS COUNCIL'S CONSIDERATION OF ADDITIONAL EVIDENCE

After the ALJ's decision was issued, plaintiff submitted a one-page San Bernardino County Transitional Assistance Medical Report, dated October 9, 2008, in which a doctor diagnosed plaintiff with ADHD and a learning disability and opined that plaintiff was temporarily disabled from October 9, 2008, to January 9, 2009.[9] [AR at 502.] In denying plaintiff's request for review of the hearing decision, the Appeals Council acknowledged that it considered the October 9, 2008, report, but determined that the report did "not provide a basis for changing the [ALJ's] decision." [See AR at 6-9.] Plaintiff contends that "there is no indication" that the Appeals Council actually addressed the information provided in the report in reviewing the ALJ's decision. [JS at 10-11.]

In considering a claimant's request for review of an ALJ's decision, the Appeals Council will review the entire record, including new evidence if it is relevant to the time period on or before the ALJ's decision, if the Appeals Council determines that the ALJ's action, findings, or conclusions are contrary to the weight of the record evidence. See 20 C.F.R. §§ 404.970, 416.1470; Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990) (reversed on other grounds); Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988). To warrant remand on the basis of the October 9, 2008, report submitted after the ALJ's decision, plaintiff must show that the report is material to making a disability determination in her case and that she had good reason for submitting the report after the ALJ's decision. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). To be material, the new evidence must bear "'directly and substantially on the matter in dispute.'" Id. (quoting Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982)). To warrant remand, plaintiff must also show "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." Id. (quoting Booz, 734 F.2d at 1380-81).

After considering the October 9, 2008, report, the Court concludes that plaintiff has not shown that the report is material to the disability determination or that there is a reasonable

---

[9] The report actually indicates that plaintiff was temporarily disabled from October 9, 2008, to January 9, 2008. [AR at 502.] This appears to be an error. The Court accepts plaintiff's representation in the Joint Stipulation that the doctor opined that plaintiff was temporarily disabled from October 9, 2008, to January 9, 2009. [JS at 10.]

probability that it would have changed the outcome of plaintiff's case. Here, the doctor's opinion that plaintiff was temporarily disabled is a determination reserved to the Commissioner, and thus it is not entitled to special weight. See 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling[10] 96-5p; Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (a physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability"). As the ALJ would not be bound to afford the October 2008 report special weight, its influence on the disability determination is not "material." Mayes, 276 F.3d at 462. Moreover, an ALJ is not bound to credit a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Here, the October 2008 report is a one-page form in which the physician checked a box to opine that plaintiff was temporarily disabled. No treatment notes or any other kind of supporting documentation were filed with the report, and it is not clear whether the doctor who signed the report relied on plaintiff's existing medical records in opining that she was temporarily disabled. Because the ALJ could reasonably reject the report as conclusory, it is not material to a disability determination in this case. Mayes, 276 F.3d at 462; see, e.g., Harper v. Chater, 1996 WL 193860, at *3 (N.D.Cal. April 17, 1996) (new evidence consisting of physician's conclusory medical report was not material evidence requiring remand). In any event, the report represented a physician's opinion that plaintiff was temporarily disabled for three months, a period of time that is too short to qualify plaintiff for SSI payments. See 42 U.S.C. § 423(d)(1)(A) (to be found disabled, an impairment must last for a continuous period of at least twelve months); see also Drouin, 966 F.2d at 1257. As such, plaintiff has also failed to show that there is a reasonable possibility that the report would have changed the outcome of her administrative hearing. Mayes, 276 F.3d at 462. Accordingly, the Appeals Council properly determined that the October 2008 report did not present a basis for changing the ALJ's decision. Remand is not warranted on this issue.

---

[10] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

## VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 19, 2010

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE